# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

COLORADO DEPARTMENT OF PUBLIC HEALTH AND ENVIRONMENT,
HAZARDOUS MATERIALS AND WASTE MANAGEMENT DIVISION,

      Plaintiff,

v.

UNITED STATES OF AMERICA,
UNITED STATES DEPARTMENT OF DEFENSE,
ROBERT M. GATES, as UNITED STATES SECRETARY OF DEFENSE,
JOHN J. YOUNG, JR., as UNDER SECRETARY OF DEFENSE FOR ACQUISITION,
TECHNOLOGY AND LOGISTICS,
ASSEMBLED CHEMICAL WEAPONS ALTERNATIVES PROGRAM,
KEVIN FLAMM, as PROGRAM MANAGER OF ASSEMBLED CHEMICAL WEAPONS
ALTERNATIVES PROGRAM,
UNITED STATES DEPARTMENT OF THE ARMY PUEBLO CHEMICAL DEPOT,
LIEUTENANT COLONEL CHRISTOPHER K. CHESNEY, as COMMANDER OF UNITED
STATES DEPARTMENT OF THE ARMY PUEBLO CHEMICAL DEPOT

      Defendants.

_____

# COMPLAINT
_____

Plaintiff, the Colorado Department of Public Health and Environment, Hazardous Materials

and Waste Management Division ("the Division"), through the Colorado Attorney General,

makes the following Complaint pursuant to 42 § U.S.C. 6961 (2006) and C.R.S. § 25-15-

308.

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over the claims set forth herein pursuant to 28 U.S.C. § 1331 (2006).  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) (2006).

## INTRODUCTION

2.  The Division comes before the Court to compel compliance with the Colorado Hazardous Waste Act, C.R.S. § § 25-15-301 to 316, (the "Act") and the Colorado Hazardous Waste Regulations, 6 CCR 1007-3, (the "Regulations").  The Army Pueblo Chemical Depot ("PCD") is an installation of the United States Department of the Army, which, in turn, is a military division of the United States Department of Defense ("DoD").  PCD is located east of Pueblo, Colorado (the "Facility").  Defendants are storing obsolete and leaking chemical warfare agent-filled weapons that are configured with explosives ("chemical munitions" or "chemical weapons") at PCD.  In Colorado, these waste chemical weapons are hazardous waste.  Most of the waste chemical weapons are stored in 94 munitions igloos.  Additionally, PCD stores identified leaking or otherwise compromised waste chemical weapons, and associated wastes, in four specially permitted igloos.

3.  Any storage of hazardous waste for purposes other than accumulating enough waste to facilitate treatment is prohibited under the Regulations § 268.50.  The Defendants have been storing hazardous waste at PCD for years while evaluating several plans for treating the chemical weapons.  The DoD terminated one plan in 2004 that would have completed treatment by 2012.  Another plan prepared in 2005, also rejected by DoD, would have completed treatment by 2014.  Although any storage of the chemical weapons violates

the Regulations § 268.50 (because PCD is storing more than enough to begin treatment), the

Division would not pursue the violation if the Defendants were planning to expeditiously

treat the wastes. Defendants' actions indicate that they are unwilling to treat the wastes in an

expeditious manner, they are ignoring the regulatory requirements, and they are delaying the

completion of treatment and destruction of these very dangerous hazardous wastes. After

showing much patience and discretion in this matter, the Division here seeks to cure the on-

going storage violations by setting a construction and treatment schedule, enforceable against

the Defendants, achieving completion of treatment by 2017.

## PARTIES

4.    The Division is the Colorado state agency responsible for enforcing the Act and

the Regulations.

5.    The DoD is a "person" as defined in 42 U.S.C. § 6903(15) (2006) and C.R.S.

§ 25-15-101(13), and is subject to and must comply with federal, state, interstate and local

requirements respecting hazardous waste management. 42 U.S.C. § 6961(a) (2006). DoD is

an "operator" of the Facility as that term is defined by the Regulations, § 260.10, and case

law. DoD makes decisions regarding the Facility's compliance with environmental

regulations.

6.    Robert M. Gates, United States Secretary of Defense, is a "person" as defined in

42 U.S.C. § 6903(15) (2006) and C.R.S. § 25-15-101(13), and is subject to and must comply

with federal, state, interstate and local requirements respecting hazardous waste

management. 42 U.S.C. § 6961(a) (2006). Secretary Gates is an "operator" of the Facility as

that term is defined by the Regulations, § 260.10, and case law.  Secretary Gates makes decisions regarding the Facility's compliance with environmental regulations.

7.   John J. Young, Jr., Under Secretary of Defense for Acquisition, Technology and Logistics, is a "person" as defined in 42 U.S.C. § 6903(15) (2006) and C.R.S. § 25-15-101(13), and is subject to and must comply with federal, state, interstate and local requirements respecting hazardous waste management.  42 U.S.C. § 6961(a) (2006).  Under Secretary Young is an "operator" of the Facility as that term is defined by the Regulations, § 260.10, and case law.  Under Secretary Young makes decisions regarding the Facility's compliance with environmental regulations.

8.   The Assembled Chemical Weapons Alternatives Program ("ACWA") is a "person" as defined in 42 U.S.C. § 6903(15) (2006) and C.R.S. § 25-15-101(13), and is subject to and must comply with federal, state, interstate and local requirements respecting hazardous waste management.  42 U.S.C. § 6961(a) (2006).  AWCA is an "operator" of the Facility as that term is defined by the Regulations, § 260.10 and case law.  ACWA makes decisions regarding the Facility's compliance with environmental regulations.

9.   Kevin Flamm, Program Manager of ACWA, is a "person" as defined in 42 U.S.C. § 6903(15) (2006) and C.R.S. § 25-15-101(13), and is subject to and must comply with federal, state, interstate and local requirements respecting hazardous waste management.  42 U.S.C. § 6961(a) (2006).  Mr. Flamm is an "operator" of the Facility as that term is defined by the Regulations, § 260.10, and case law.  Mr. Flamm makes decisions regarding the Facility's compliance with environmental regulations.

10.  United States Army Pueblo Chemical Depot ("PCD") is a "person" as defined in 42 U.S.C. § 6903(15) (2006) and C.R.S. § 25-15-101(13), and is subject to and must comply with federal, state, interstate and local requirements respecting hazardous waste management.  42 U.S.C. § 6961(a) (2006).  PCD is the "owner" and an "operator" of the Facility as those terms are defined by the Regulations, § 260.10, and case law.  PCD makes decisions regarding the Facility's compliance with environmental regulations.

11.  Lieutenant Colonel Christopher K. Chesney, Commander of PCD,  is a "person" as defined in 42 U.S.C. § 6903(15) (2006) and C.R.S. § 25-15-101(13), and is subject to and must comply with federal, state, interstate and local requirements respecting hazardous waste management.  42 U.S.C. § 6961(a) (2006).  Lieutenant Colonel Chesney is an "operator" of the Facility as that term is defined by the Regulations, § 260.10, and case law.  Lieutenant Colonel Chesney makes decisions regarding the Facility's compliance with environmental regulations.

## GENERAL ALLEGATIONS

12.  Prior to 1988, operations at the Facility included acting as a reserve storage depot under the command of the Tooele Army Depot (Utah), maintenance of assigned commodities and facilities, operation of a calibration laboratory, testing and repairing missile systems, and treatment and destruction ("demilitarization") of munitions.  The Facility's role changed under the Base Realignment and Closure Act of 1988.  Current operations at the Facility only include the storage of waste chemical weapons ("Hazardous Waste Chemical Munitions")

and other wastes containing the chemical warfare agents HT and HD (mustard) ("Hazardous Waste Agent").

13. Congress enacted the Resource Conservation and Recovery Act ("RCRA") in 1976 "to assist the citizens, counties, and states in the solution of the discarded materials problem and to provide nationwide protection against the dangers of improper hazardous waste disposal." H.R. Rep. No. 1491, 94th Cong., 2d Sess. 11 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6238 m 6249. The United States Environmental Protection Agency ("EPA") may authorize states to carry out their own hazardous waste programs in lieu of RCRA. 42 U.S.C. § 6926(b) (2006). Colorado received final authorization in 1984 to implement the Act and the Colorado Hazardous Waste Management Program, in lieu of the federal RCRA hazardous waste management program. The federal government must comply with RCRA or instead, the EPA-authorized state program, "to the same extent as any person…" 42 U.S.C. § 6961 (2006). Under EPA authorization, a state's regulations may be more stringent than the federal program. Authorized state program regulations stand in lieu of the federal regulations for both federal and nonfederal regulated entities.

14. The Act and Regulations require a permit for the treatment, storage, and disposal of any hazardous waste. The permit application process for existing facilities is implemented in two phases. Initially, any existing facility obligated to obtain a permit is required to submit a "Part A" application, which provides a preliminary notification of the facility location and a general description of its hazardous waste management activities. Such facilities are deemed to have a Part A permit and can operate under "interim status" until a

final administrative decision is made on a more detailed "Part B" permit application. The Regulations § 265.1.

**A. Permit History of PCD**

15. On or about August 18, 1980, PCD notified the EPA that its operations included generation, treatment, storage and disposal of hazardous waste at the Facility. PCD was issued EPA identification number CO8213820725.

16. On or about November 17, 1980, PCD submitted a Part A permit application to the EPA for the storage of hazardous waste at the Facility and thereby received interim status for the treatment and storage of certain hazardous wastes at the Facility.

17. On or about December 21, 1984, PCD submitted a Part B permit application to the EPA for the treatment and storage of hazardous waste at the Facility.

18. In accordance with the Act, on or about June 15, 1992, PCD was issued a State Hazardous Waste Permit (#CO-92-06-15-01, EPA I.D.#C08213820725) for the storage of hazardous waste at the Facility.

19. On or about August 8, 2002, PCD was issued a renewed Part B State Hazardous Waste Permit (#CO-02-08-08-01, EPA I.D.#C08213820725) ("the Permit"), in part for the storage of certain hazardous waste at the Facility in four container storage units known as "igloos." The permitted container storage igloos are identified by the following numbers: G1009, G1107, G1109 and G1110 ("Permitted Igloos").

20. The Permitted Igloos store Hazardous Waste Chemical Munitions and Hazardous Waste Agent that carry the following hazardous waste codes: K901 (6 CCR 1007-3, section

7

261.32) and/or P909 and P910 (6 CCR 1007-3, section 261.33(e)), D001, D003 – D011,

D022, D028, D030, D034, D039, D040 and D043 (6 CCR 1007-3, sections 261.21, 261.22

and 261.24).  The Hazardous Waste Chemical Munitions stored in the Permitted Igloos have

been either intrusively sampled or identified as leaking or possibly leaking munitions.

     21.  Condition II.M of the Permit requires PCD to comply with all applicable

requirements of the Regulations, including Part 268, the Land Disposal Restrictions, which

in turn includes § 268.50, the prohibition on storage of hazardous wastes.

     22.  In 1997, ACWA was established as a part of DoD pursuant to Pub.L. 104-208 for

the purpose of identifying and demonstrating alternatives to the Army's incineration process

for the treatment of assembled chemical munitions.

**B.  Initial Proposed Destruction Schedule With Completion Date of 2012**

     23.  On or about September 20, 2004, the Division received a copy of the intermediate

design for the Pueblo Chemical Agent-Destruction Pilot Plant ("PCAPP") from ACWA,

outlining an alternative (neutralization, followed by biotreatment) to the Army's incineration

process for the treatment of the waste.  PCAPP is the facility, yet to be completed, that will

disassemble the Hazardous Waste Chemical Munitions and destroy the chemical agent at

PCD. The intermediate design described a 42.5 acre agent treatment facility that included

several hazardous waste treatment units.  Under the 2004 intermediate design for PCAPP,

treatment of the Hazardous Waste Chemical Munitions and Hazardous Waste Agent at PCD

would have been completed within eight years of the design date and by the international

Chemical Weapons Convention deadline of April 29, 2012.  This 2012 date, while not

compliant with the storage limitation for restricted wastes found in the Regulations, was deemed reasonably expeditious by the Division, given the complexity of the project.

24.    On or about September 30, 2004, the Under Secretary of Defense for Acquisition, Technology and Logistics ordered a stop to the engineering design and construction implementation for the planned PCAPP because the intermediate design for PCAPP and the implementation schedule were deemed to be too expensive.  The Under Secretary of Defense for Acquisition, Technology and Logistics subsequently ordered that the PCAPP be redesigned to meet a lower life-cycle cost estimate.

25.    Following the stop work order, the Division requested that PCD submit a Part A permit application for the storage of the remaining hundreds of thousands of Hazardous Waste Chemical Munitions that are stored in the 94 storage units ("Interim Status Igloos") at the Facility.  On or about July 27, 2005, seven days after the 30 day deadline imposed by the Division and the Regulations §§ 100.20(a)(2) and 100.11(a)(2)(ii), PCD submitted its Part A application.  This 2005 Part A application covers the majority of the waste chemical munitions stored at PCD, separate from the four Permitted Igloos. The July 2005 Part A submittal appropriately classified the chemical munitions stored at PCD as hazardous wastes and therefore subject to the interim status storage requirements, and to the storage prohibition at § 268.50 in the Regulations.

## C.  Proposed Redesign of PCAPP Unnecessarily Delays Treatment

26.    In or around September of 2005, the Bechtel Pueblo Team (the systems contractor for PCAPP), with the oversight of ACWA, prepared a redesign of the PCAPP to

the Under Secretary's lower life-cycle cost estimate with an implementation schedule to complete treatment of the Hazardous Waste Chemical Munitions and Hazardous Waste Agent at PCD by 2014. The redesigned facility resulted in a 15.5 acre (63 percent smaller) facility with reduced waste processing rates and diminished waste treatment capacity. The DoD subsequently accepted the Bechtel redesign but unilaterally adjusted the implementation schedule for the redesigned facility, thereby delaying the completion date for final treatment of the Hazardous Waste Chemical Munitions and Hazardous Waste Agent to 2020, or eight years longer than the original design and six years longer than the Bechtel Pueblo Team had indicated would be necessary.

27. PCD's submittal of its Part A application for the Interim Status Igloos was late. Therefore, on January 5, 2006, the Division issued Compliance Order 06-01-05-01 to extend the deadline for submittal of the Part A application in accordance with the Regulations, § 100.11(a)(4). In the same Order, the Division approved PCD's interim status for the storage of the Hazardous Waste Chemical Munitions in the Interim Status Igloos at the Facility, and this Order became effective on February 13, 2006. The Defendants did not appeal Compliance Order 06-01-05-01 and are therefore barred by the doctrine of exhaustion of administrative remedies from contesting the Order on the merits, including findings of fact, conclusions of law, and compliance requirements set forth by the Division.

28. Interim status allows the Facility to operate the Interim Status Igloos as hazardous waste storage facilities until a final administrative determination is made on any Part B permit application. PCD has not applied for a Part B permit for the Interim Status Igloos.

10

29.  The storage of Hazardous Waste Chemical Munitions in the Interim Status Igloos includes K901 listed hazardous waste as defined by 6 CCR 1007-3, section 261.32 and D001, D003 – D011, D022, D028, D030, D034, D039, D040 and D043 characteristic hazardous waste as defined by 6 CCR 1007-3, sections 261.22, 261.23 and 261.24.

30.  By early 2006, PCD had acknowledged that the entire chemical munitions stockpile stored at PCD is hazardous waste by both obtaining the Permit for the Hazardous Waste Chemical Munitions and Hazardous Waste Agent stored in the Permitted Igloos and by submitting the Part A application for the Hazardous Waste Chemical Munitions stored in the Interim Status Igloos.

31.  50 U.S.C. §1512a(a) (2006) prohibits the transportation of the stockpiled chemical munitions from PCD to any other hazardous waste treatment facility.

**D.  Current Proposed Schedule Delays Completion of Treatment**

32.  The Division's Compliance Order No. 06-01-05-01, as referenced in paragraph 27, requires that the Hazardous Waste Chemical Munitions and Hazardous Waste Agent be expeditiously treated at the PCAPP facility.  Paragraph 56(b)(v) of the Compliance Order required PCD to submit a Chemical Weapons Waste Treatment Plan, which, among other things, required expeditious treatment of all chemical weapons stored at the Facility.

33.  On or about September 30, 2006, PCD submitted a Chemical Weapons Waste Treatment Plan ("Waste Treatment Plan") for the Hazardous Waste Chemical Munitions and Hazardous Waste Agent, which identified 2020 as the treatment completion date. Subsequent amendments to the Waste Treatment Plan were submitted on June 6, 2007 and

September 30, 2007, which amended the completion date for treatment of the Hazardous Waste Chemical Munitions and Hazardous Waste Agent to 2021.  Under PCD's current Waste Treatment Plan, treatment of the Hazardous Waste Chemical Munitions and Hazardous Waste Agent will take over 13 years to complete, which is not expeditious compared to previous options. Therefore, the Division is no longer willing to exercise enforcement discretion for storing hazardous waste in violation of Compliance Order No. 06-01-05-01, paragraph 56(b)(v) and the Regulations § 268.50.

**E.  Inspection of the Hazardous Wastes Stored at PCD**

34.  On May 22-23, 2007 the Division conducted an inspection, pursuant to the Division's authority under the Act § 25-15-301(3), at the Facility for the purpose of determining compliance with the Act, the Regulations, and the Permit.

35.  On May 22, 2007 the Division conducted an inspection of the four Permitted Igloos (identified by the numbers G1009, G1107, G1109 and G1110) at the Facility, and identified 585 containers of Hazardous Waste Chemical Munitions and Hazardous Waste Agent in the Permitted Igloos.

36.  At that time, all of the 585 containers of Hazardous Waste Chemical Munitions and Hazardous Waste Agent stored in the Permitted Igloos were labeled as D001, D003, D004-D011, D022, D028, D030, D034, D039, D040, D043, K901, P909, and P910 hazardous waste.  Some of the 585 containers also hold propellant waste that is a characteristic hazardous waste with the following hazardous waste codes: D001, D003, and D030.

37.  The 585 containers of hazardous waste stored in the Permitted Igloos are composed of three distinct waste types: stockpile wastes, non-stockpile wastes, and secondary wastes.  There are 537 containers of stockpile wastes, which consist of 26 containers of leaking chemical munitions, 19 chemical munitions overpacked for safety reasons, and 492 containers of overpacked SUPLECAM and DATS program chemical munitions.  There are 11 containers of non-stockpile wastes, which consist of U.S. Department of Transportation containers of liquid mustard agent.  There are 37 containers of secondary wastes, which consist of agent-contaminated solid wastes, such as contaminated personal protective equipment.

38.  All of the 585 containers of Hazardous Waste Chemical Munitions and Hazardous Waste Agent have been in storage for greater than one year.  The great majority of the containers have been in storage for greater than five years.

39.  PCD has accumulated and stores hazardous waste on-site in the four Permitted Igloos.

40.  In addition to the 585 containers in the Permitted Igloos, there are many hundreds of thousands of Hazardous Waste Chemical Munitions stored in the 94 Interim Status Igloos. These stockpile chemical munitions have been in storage for over 50 years and have been stored as hazardous waste for well over two years.  The Hazardous Waste Chemical Munitions in the Interim Status Igloos are obsolete, degrading, and unusable, but have not been sampled or identified as leaking, as have those in the Permitted Igloos.

41. On or about November 13, 2007 the President signed Pub.L. 110-116, which requires destruction of the stockpiled chemical munitions no later than December 31, 2017. Pub.L. 110-116 § 8119.

### FIRST CLAIM FOR RELIEF
### (Violation of 6 CCR 1007-3, section 268.50(c) -
### Failure to Comply With the Prohibitions on Storage of Restricted Wastes in
### Interim Status Igloos)

42. The allegations of the above paragraphs are incorporated herein by reference.

43. Storage of hazardous waste restricted from land disposal is prohibited unless the wastes are being stored for the sole purpose of accumulating such quantities as may be necessary to facilitate their proper treatment and disposal in accordance with the Regulations, § 268.50. The Federal Facilities Compliance Act, 42 U.S.C. 6961(a), requires Defendants to comply with the Act and Regulations.

44. An owner/operator of a treatment, storage or disposal facility may store restricted waste for up to one year solely for the purpose of accumulation of such quantities of hazardous waste as are necessary to facilitate proper recovery, treatment or disposal under the Regulations, § 268.50.

45. Treatment of the Hazardous Waste Chemical Munitions stored in the Interim Status Igloos was delayed in order to reduce annual funding requirements for PCAPP and expenditures necessary to complete expeditious treatment of the munitions.

46. A sufficient quantity of Hazardous Waste Chemical Munitions exists in the Interim Status Igloos at the Facility to facilitate their proper treatment and destruction. Therefore, the owners and operators of PCD are not storing the Hazardous Waste Chemical

14

Munitions in the Interim Status Igloos solely for the purpose of accumulation of such quantities of hazardous waste as necessary to facilitate proper recovery, treatment or disposal of the waste, and are storing hazardous waste at the Facility in violation of 6 CCR 1007-3, section 268.50.

## SECOND CLAIM FOR RELIEF
### (Violation of 6 CCR 1007-3, section 268.50(c) and Permit #CO-02-08-08-01, Condition II.M - Failure to Comply With the Prohibitions on Storage of Restricted Wastes in Permitted Igloos)

47.  The allegations of the above paragraphs are incorporated herein by reference.

48.  The Hazardous Waste Chemical Munitions and Hazardous Waste Agent in all of the 585 containers stored in the Permitted Igloos are restricted from land disposal under Subpart C of Part 268 of the Regulations.  The Federal Facilities Compliance Act, 42 U.S.C. § 6961(a), requires the Defendants to comply with the Act and Regulations.

49.  Storage of hazardous waste restricted from land disposal is prohibited unless the wastes are being stored for the sole purpose of accumulating such quantities as may be necessary to facilitate their proper treatment and disposal in accordance with the Regulations, at § 268.50.

50.  An owner/operator of a treatment, storage or disposal facility may store restricted waste for up to one year solely for the purpose of accumulation of such quantities of hazardous waste as are necessary to facilitate proper recovery, treatment or disposal under the Regulations, at § 268.50.

51.  Condition II.M of the Permit requires the owners and operators of PCD to comply with all applicable requirements of the Regulations, including Part 268, the Land Disposal Restrictions.

52.  A sufficient quantity of Hazardous Waste Chemical Munitions exist in the Permitted Igloos and Interim Status Igloos to facilitate proper treatment and destruction. Therefore, the owners and operators of PCD are not storing the 585 containers of Hazardous Waste Chemical Munitions and Hazardous Waste Agent in the Permitted Igloos at the Facility solely for the purpose of accumulation of such quantities of hazardous waste as necessary to facilitate proper recovery, treatment or disposal of the waste, and are storing the 585 containers of hazardous waste in violation of 6 CCR 1007-3, section 268.50 and Condition II.M of the Permit.

**THEREFORE, THE DIVISION REQUESTS THAT THIS COURT:**

1.  Issue a mandatory injunction requiring compliance with the Act and Regulations § 268.50;

2.  Issue a mandatory injunction requiring submission to the Division for its review and approval a Chemical Weapons Waste Treatment Plan for the treatment of all Hazardous Waste Chemical Munitions and Hazardous Waste Agent in both the Permitted Igloos and the Interim Status Igloos, and requiring such plan to include the following:

16

a. a complete project schedule that depicts the tasks necessary for the destruction of all Hazardous Waste Chemical Munitions and Hazardous Waste Agent at PCD with a completion date of December 31, 2017; and

b. allowance for designation of certain tasks throughout the schedule as "milestones" by the Division. "Milestones" will be deadlines enforceable by the Division for those tasks; and

c. the technical rationale for the proposed schedule; and

d. quarterly updates describing the progress made toward achieving the tasks and milestones, and any modifications or revisions to the project schedule or technical rationale contained in the Chemical Weapons Waste Treatment Plan.

3. Provide such other relief as the Court determines is appropriate.

Respectfully signed this September 2, 2008.

JOHN W. SUTHERS
Attorney General

E-filed pursuant to D.C.COLO.LCivR 5.6 and 10.1.  A duly signed original is on file at the Colorado Department of Law.

/s/
DAVID E. KREUTZER
First Assistant Attorney General
David.Kreutzer@state.co.us
Telephone:  (303) 866-5667

HANNAH NAUMOFF-DULSKI
Assistant Attorney General
Hannah.Naumoff-Dulski@state.co.us
Telephone:  (303) 866-5018

Office of the Attorney General
Hazardous and Solid Waste
Natural Resources and Environment Section
1525 Sherman Street
Denver, CO 80203

Attorneys for Plaintiff

CERTIFICATE OF SERVICE

This is to certify that I have duly served the foregoing **COMPLAINT** upon the defendants herein by depositing a copy of same in the United States mail by first class certified mail, postage prepaid, this 2nd day of September, 2008, addressed as follows:

Dr. Robert M. Gates                              Michael Mukasey
United States Secretary of Defense      United States Attorney General
1000 Defense Pentagon                        U.S. Department of Justice
Washington, D.C. 20301-1000             950 Pennsylvania Ave. NW
                           `                                  Washington, D.C. 20530-0001


John J. Young                                       Troy Eid
Under Secretary of Defense                 U.S. Attorney for the District of Colorado
(Acquisition, Technology & Logistics)   1225 17th St., Suite 700
3010 Defense Pentagon                        Denver, CO 80202
Washington, D.C. 20301-3010             troy.eid@usdoj.gov

Lieutenant Colonel Chris Chesney
Commander, Pueblo Chemical Depot
45825 Highway 96 East, Bldg. 1
Pueblo, CO 81006

Kevin Flamm, Program Manager
Assembled Chemical Weapons Alternatives Program
Attn:  AMSCM-SCM
E5183 Blackhawk Road
Aberdeen Proving Ground, MD 21010

Alan Greenberg, Esq.
U.S. Department of Justice
Environment & Natural Resources Dvn.
1961 Stout St., Fl. 8
Denver, CO 80294-1961
alan.greenberg@usdoj.gov

E-filed pursuant to D.C.COLO.LCivR 5.6 and 10.1.  A duly signed original is on file at the Colorado Division of Law.

  /s/