IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 08-CV-01883-RPM

COLORADO DEPARTMENT OF PUBLIC HEALTH AND ENVIRONMENT,
HAZARDOUS MATERIALS AND WASTE MANAGEMENT DIVISION,

Plaintiff,

v.

UNITED STATES OF AMERICA;
UNITED STATES DEPARTMENT OF DEFENSE;
ROBERT M. GATES, as United States Secretary of Defense;
JOHN J. YOUNG, JR., as Under Secretary of Defense for Acquisition, Technology and
   Logistics;
ASSEMBLED CHEMICAL WEAPONS ALTERNATIVES PROGRAM;
KEVIN FLAMM, as Program Manager of Assembled Chemical Weapons Alternatives Program;
UNITED STATES DEPARTMENT OF THE ARMY PUEBLO CHEMICAL DEPOT, and
LIEUTENANT COLONEL CHRISTOPHER K. CHESNEY, as Commander of United States
Department of the Army Pueblo Chemical Depot,

Defendants.

ORDER DENYING THE PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT

The Pueblo Chemical Depot ("PCD") is a United States Army installation located east of

Pueblo, Colorado. The PCD's current operations are limited to the storage of chemical weapons

and other materials, many of which contain the chemical agents HT and HD (mustard agent).

Chemical weapons have been stored at the PCD since the 1950s.

In 1985, Congress directed the destruction of the nation's stockpile of chemical agents

and munitions. *See* 50 U.S.C. § 1521. All chemical weapons stored at the PCD must be

destroyed pursuant to that law and the Chemical Weapons Convention Treaty, an international treaty ratified by the United States in April 1997.

The United States Department of Defense ("DOD") is charged with responsibility for providing "adequate and safe facilities designed solely for the destruction of lethal chemical agents and munitions" and that provide "maximum protection for the general public and the environment." 50 U.S.C. §§ 1521(c)(1)(A), (B). Congress initially directed the Army to verify the effectiveness of incineration technology as a means for destroying the stockpile. *See* 50 U.S.C. § 1521(k); *see also Chemical Weapons Working Group, Inc. v. Dept' of the Army*, 111 F.3d 1485, 1487-88 (10th Cir. 1997) (describing the verification process for incineration technology). Because of developing concerns about incineration technology, Congress required an evaluation of alternative technologies. A federal program known as the Assembled Chemical Weapons Assessment program ("ACWA") was established as part of the Department of Defense to develop alternative means for destroying the nation's chemical weapons stockpile.

In 2002, the ACWA program manager was charged with responsibility for the "management of the construction, operation, and closure . . . of chemical demilitarization activities at the Pueblo Army Depot, Colorado, including the management of the pilot-scale facility phase of the alternative technology selected for the destruction of lethal chemical munitions." Department of Defense Appropriations Act, 2003, Pub. L. No. 107-248, Title VIII, § 8122(b), 116 Stat. 1519, 1566 (2002). The selected technology is neutralization followed by biological treatment. In 2003, the DOD awarded a contract to Bechtel National, Inc. to construct the Pueblo Chemical Agent Destruction Pilot Plant. That plant is to be the nation's first neutralization and biological treatment facility for assembled chemical munitions.

Groundbreaking occurred in September 2004.  Construction was delayed due to budgetary issues with Bechtel and has not been completed.

More than 2,600 tons of mortars and projectiles containing mustard agent are stored at the PCD in 98 reinforced structures called igloos.  Four of these igloos, identified as G1009, G1107, G1109, and G1110, contain waste chemical munitions (i.e, stockpile waste), other chemical waste, and secondary waste materials such as contaminated personal protective equipment.  The chemical munitions stored in those four igloos can no longer be used for their intended purpose.  The other 94 igloos contain chemical munitions that the Army describes as undamaged and usable.

The Federal Facilities Compliance Act requires federal departments and agencies to comply with federal, state, interstate and local requirements pertaining to hazardous waste management.  42 U.S.C. § 6961.  The Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. § § 6901-6902k, authorized a federal regulatory scheme for the management of hazardous waste and permitted the States to seek authorization from the United States Environmental Protection Agency for their own programs.  State programs authorized by the EPA operate in lieu of equivalent federal requirements.  In 1985, Colorado enacted a hazardous waste program, after obtaining EPA authorization.  *See* C.R.S. §§ 25-15-301, *et seq.* The Hazardous Materials and Waste Management Division of the Colorado Department of Public Health and Environment is the State agency responsible for enforcement of Colorado's hazardous waste management regulations.

Colorado generally prohibits the long-term storage of hazardous wastes that are restricted from land disposal.  6 Colo. Code Reg. 1007-3, § 268.50.  A permit is required for the

treatment, storage and disposal of any hazardous waste.  To obtain a permit an applicant submits a Part A application, providing a general description of the applicant's facility and hazardous waste management activities.  More detailed information is required in a Part B application.  Upon receipt of the Part A application, the Hazardous Materials and Waste Management Division (hereinafter, "the Department") may allow the storage of hazardous waste on an interim basis.  A final permit will issue only upon the Department's approval of an applicant's Part B submission.

In June 1992, the Department issued a permit to the PCD for the storage of hazardous waste in the four igloos housing waste materials.  That permit was renewed in 2002 as a final permit, effective from September 7, 2002, through September 7, 2012.  (Def's Ex. H; *see also* Pl.'s Ex. 2.)

Before 2005, the Department did not exercise regulatory authority over the PCD's storage in the other 94 igloos.  The usable chemical munitions in those igloos were not considered to be hazardous waste under Colorado law.  (*See* Ex. 5 to Pl.'s Reply.)  In 2005, the Department sent a letter to the PCD, declaring for the first time that the chemical weapons stored in the 94 igloos are hazardous waste and must be managed in accordance with Colorado's regulations.  (Pl.'s Ex. 11.)  The Department informed the PCD that the storage of chemical weapons in those igloos might qualify for interim permit status and requested that the PCD submit a Part A permit application.

The PCD disagreed that the usable chemical weapons stored in the 94 igloos constitute "waste," but submitted the requested Part A permit application "as a matter of comity."  (Pl.'s

Ex. 12.)  The PCD submitted the Part A application after the initial deadline imposed by the Department.

In January 2006, the Department issued Compliance Order No. 06-01-05–01, stating that the PCD was violating the Colorado Hazardous Waste Management Act by storing hazardous wastes in the 94 igloos without a permit and by delaying construction of the plant needed to destroy the chemical weapons.  In February 2006, the Department amended that order, after conferring with the PCD.  (*See* Pl.'s Ex. 14.)  The amended Compliance Order No. 06-01-05-01 ("the 2006 Compliance Order) became effective on February 13, 2006.  The 2006 Compliance Order accepted the late filed Part A application and determined that "PCD qualifies for interim status for the storage of the chemical weapons in the Stockpile Storage Units based on its submission of the Part A application . . . ."  (*Id.* ¶ 50 at p. 8.)  The PCD did not appeal the 2006 Compliance Order.

The 2006 Compliance Order required that the PCD submit by September 30, 2006, a Chemical Weapons Waste Treatment Plan with a schedule for the expeditious destruction of all chemical weapons stored at the PCD.  (*Id.* ¶ 56, at p. 10.)  The 2006 Compliance Order directed that "chemical weapons destruction activities shall be completed by April 29, 2012, or as specified in the Plan submitted September 30, 2006, or as subsequently modified in annual reports."  (*Id.* ¶ 56(e) at p. 11.)

On September 30, 2006, the PCD submitted a Chemical Weapons Treatment Plan, but the PCD's plan identified 2020 as the treatment completion date.   In 2007, the Defendants submitted amendments to the treatment plan, identifying 2021 as the treatment completion date.

The Department issued another compliance order on June 16, 2008 ("the 2008 Compliance Order"). (Def.'s Ex. E). The 2008 Compliance Order directed the PCD, the DOD and the ACWA Program to submit a new treatment plan, having a completion date of December 31, 2017, with enforceable interim deadlines. In response, the PCD initiated an administrative appeal, seeking a stay of the 2008 Compliance Order. The Department then withdrew the 2008 Compliance Order.

On September 3, 2008, the Department commenced this action, alleging two claims for relief. In the first claim, the Plaintiff alleges that the Defendants are violating § 268.50(c) of the Colorado Code of Regulations by storing hazardous wastes in the 94 "Interim Status Igloos." (Compl. ¶¶ 42-46.) The second claim alleges that the Defendants are violating that same regulation by storing hazardous wastes in the four "Permitted Igloos." (Compl. ¶¶ 47-52.) Section 268.50 of the Colorado Regulations prohibits the storage of hazardous wastes restricted from land disposal, except under certain circumstances. Section 268.50(c) provides:

> An owner/operator of a treatment, storage or disposal facility may store [hazardous wastes restricted from land disposal] beyond one year; however, the owner/operator bears the burden of proving that such storage was solely for the purpose of accumulation of such quantities of hazardous waste as are necessary to facilitate proper recovery, treatment, or disposal.

6 Colo. Code Reg. 1007-3, § 268.50(c). The Complaint alleges – and there is no dispute – that the quantity of waste materials stored at the PCD is sufficient for treatment or disposal. The Complaint alleges that the storage of chemical munitions and waste materials at the PCD violates Section 268.50(c) because that storage has continued for many years and is not for the purpose of accumulating such quantities as are necessary to facilitate proper recovery, treatment or disposal.

Characterizing this action as an enforcement proceeding pursuant to C.R.S. § 25-15-308, the Department seeks a mandatory injunction requiring the Defendants to submit for its review and approval a Chemical Weapons Waste Treatment Plan having "a complete project schedule that depicts the tasks necessary for the destruction of all Hazardous Waste Chemical Munitions and Hazardous Waste Agent at PCD with a completion date of December 31, 2017." (Compl. "Wherefore Clause," at pp. 15-16.)  The Department contends that the project schedule must designate certain tasks as milestones; that the Defendants must provide the technical rationale for the proposed schedule, and that the Defendants must provide quarterly updates describing the progress made toward achieving the tasks and milestones and any modifications or revisions to the project schedule or technical rationale.  (*Id.*)

The Defendants answered the Complaint on November 3, 2008, denying that Colorado has regulatory authority to seek an enforcement order from this Court.

The Plaintiff moved for partial summary judgment, seeking affirmation of its claim of regulatory authority.  That motion has been fully briefed.  The Court heard oral arguments on July 1, 2009.  The Plaintiff's motion and the Defendants' response identify the following issues:

(1)  Whether the chemical weapons stored in the 94 igloos are "hazardous waste," as defined by Colorado's regulations.  In connection with that issue, the Plaintiff contends that the PCD's submission of the Part A permit application and the PCD's failure to appeal the 2006 Compliance Order preclude the Defendants from disputing that the chemical weapons stored in the 94 igloos are hazardous waste.

(2) Whether Colorado's regulations pertaining to the storage of hazardous waste apply to chemical weapons and agents that were placed in storage at the PCD before July 30, 1989 (the effective date of Colorado's storage prohibition regulation), and

(3) Whether the Department's present enforcement efforts are preempted by federal law.

The first two issues need not be addressed because the doctrine of conflict preemption prevents this court from granting the relief requested in the Complaint. Conflict preemption arises when a party cannot comply with both state and federal law, or where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (1999); *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

As set forth above, federal law addresses the management and destruction of the nation's stockpiled chemical weapons. The technology to be employed is the subject of federal law. Congress controls the funding for the construction and operation of demilitarization facilities. Federal law prohibits the Department of Defense from transporting chemical munitions across state lines. 50 U.S.C. § 1512(a). Congress requires the Secretary of Defense to provide annual reports to Congress about the Defense Department's activities relating to destruction of the stockpile, including "how much longer the stockpile can continue to be stored safely." 50 U.S.C. § 1521(g)(2)(D)(I). Federal law addresses the stockpile elimination deadline, and incorporates the date established by the Chemical Weapons Convention. *See* 50 U.S.C. § 1521(b)(2).

In 2007, Congress amended the deadline to require the Department of Defense to complete work on the destruction of the United States stockpile of lethal chemical agents and munitions, including those stored at the PCD, "by the deadline established by the Chemical

Weapons Convention [April 2012], and in no circumstances later than December 31, 2017." Department of Defense Appropriations Act, 2008, Pub. L. No 110-116, § 8119, 121 Stat. 1295 (2007) (Pl.'s Ex. 16.) Congress currently requires the Secretary of Defense to report to Congress every 180 days on progress toward meeting this destruction deadline and on options and alternatives for accelerating completion of the chemical weapons destruction. National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-181, § 922, 122 Stat. 3 (2008).

The Plaintiff denies any conflict between federal and state law, pointing out that the Department seeks to impose the same completion deadline (December 31, 2017) and reporting requirements similar to those currently required under federal law. The Plaintiff also argues there is no conflict between state and federal law because "Colorado is not seeking treatment of the wastes now, or even within one year." (Pl.'s Reply at 24.) In its Reply, the Plaintiff states that Section 268.50 is not a one-year only storage provision, emphasizing that the Colorado regulatory scheme assumes prosecutorial discretion with respect to enforcement. (*Id.* at 23-24.)

The Plaintiff's arguments fail. The Plaintiff's claims and the requested relief are premised on enforcement of Section 268.50 of the Colorado Regulations. Enforcement of that regulation now would conflict with the federal legislative scheme for managing the destruction of the nation's chemical weapons. The requested mandatory injunctive relief is improper. The Plaintiff's effort to impose a state-devised completion schedule must yield to federal control over this process.

The Plaintiff implicitly acknowledges the conflict between federal and Colorado law by its conduct, by its manner of pleading and by its response to the Defendants' preemption argument. The Plaintiff has not revoked the Permit for the four igloos and has not revoked the

grant of interim status with respect to the other 94 igloos.  Accordingly, the PCD's storage activities currently are being conducted with the Department's permission.  In the Complaint, the Plaintiff alleges that it would not pursue the alleged violation if the Defendants were planning to expeditiously treat the wastes.  (Compl. ¶ 3.)  In its Reply, the Plaintiff represents that it is in fact exercising prosecutorial discretion and forbearing from immediate enforcement of Section 268.50.  If that is so, then there is no legal basis for the Plaintiff's claims, and the Plaintiff's request for mandatory injunctive relief is more aptly characterized as the Plaintiff's proposed resolution to a *threatened* enforcement action.

The Department's pleading position in this case is inconsistent with its action in filing a second action in the District Court, Pueblo County, Colorado after oral argument in this case.  In that action, removed to this court and now pending as Civil Action No. 1:09-cv-2016-REB-MJW, the Department seeks a preliminary injunction to compel compliance with the 2006 Compliance Order and the complaint seeks civil penalties for non-compliance.  The underlying premise of both these cases is not tenable – that Colorado law controls the destruction of chemical weapons at the PCD.  Colorado's regulatory scheme has received EPA approval and is therefore generally applicable in lieu of federal requirements under the RCRA.  However, Congress has specifically directed the actions to be taken at the PCD for destruction of the chemical munitions stored there.  The statutes enacted since the 2006 Compliance Order are the

bases for the conflict preemption that precludes the State's interference with that program. Congress has superior authority in this matter.

Accordingly, it is

ORDERED that the Plaintiff's motion for partial summary judgment is denied.

Dated: September 22, 2009

BY THE COURT:

s/Richard P. Matsch

_____

Richard P. Matsch, Senior District Judge